IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERNEST NELSON,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>VERIZON PENNSYLVANIA, LLC,<br>　　　　Defendant. | :<br>:<br>:<br>:  Civil No. 2:19-cv-05467-JMG<br>:<br>:<br>: |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                              **December 1, 2021**

　　Plaintiff Ernest Nelson was employed by Defendant Verizon Pennsylvania, LLC as a service technician on a three-year, temp-to-hire contract. Verizon did not retain Plaintiff as a full-time, permanent employee at the conclusion of his contract term because he did not meet the requisite hiring criteria. Plaintiff claims that Verizon discriminated against him based on his race. He sues Verizon for employment discrimination, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and the Pennsylvania Human Relations Act ("PHRA").[2] Defendant moves for summary judgment on all counts. For the reasons that follow, the Court will grant Defendant's motion for summary judgment.

**I.　　BACKGROUND**

　　**1.　　Allegations**

　　Plaintiff Ernest Nelson is an African American man. Compl. ¶ 2, ECF No. 1. Defendant Verizon is a provider of telecommunications and internet services throughout Pennsylvania. Def.'s

---

1　　42 U.S.C. § 2000e-2(a)(1).

2　　43 P.S. § 955(a).

Statement of Undisputed Facts ("DSOF") ¶ 1, ECF No. 23-1. Defendant hired Plaintiff in May 2017 for an at-will position performing installation and maintenance for customers in Southeastern Pennsylvania. DSOF ¶ 11; Pl.'s Opposition to Def.'s Undisputed Statement of Facts ("POSOF") ¶ 11, ECF No. 24-2.

Plaintiff was hired for a three-year term and worked out of the Coatesville garage, where he was one of four temporary service technicians. Compl. ¶¶ 12, 17, 21; DSOF ¶¶ 12, 17, 21. The other three temporary technicians placed in that garage were Devin Brink, Robert Markley, and Thomas Miller, all of whom are white. DSOF ¶ 21; POSOF ¶ 21; J.A. 0030. Plaintiff's direct supervisor was Christopher Al-Chokacky, a local manager who supervised a portion of the Coatesville technicians. DSOF ¶¶ 18, 20; POSOF ¶¶ 18, 20. Plaintiff also had a second-line manager, Matthew Freeman, who supervised numerous Verizon garages. DSOF ¶¶ 19, 20; POSOF ¶¶ 19, 20; J.A. 0030. Plaintiff emphasizes that he was one of only two African American employees out of the 30-40 total employees at the Coatesville garage. Compl. ¶ 13; POSOF ¶ 22; J.A. 0030.

In July 2018, Defendant and Plaintiff's union, the Communication Workers of America Union, agreed to transition certain temporary service technicians to permanent roles. DSOF ¶ 50; POSOF ¶ 50. Their agreement ("The July Agreement") provided that *only* temporary service technicians with performance ratings of "Exceeds Expectations" or "Meets Expectations" were eligible for permanent positions. DSOF ¶ 51; POSOF ¶ 51.[3]

Performance ratings were based on a number of objective metrics, including: (1) being on time for assigned jobs ("Arrival Window"), (2) how long it took, on average, to complete each

---

[3] Plaintiff was a member of the union and aware of The July Agreement. DSOF ¶¶ 50, 52; POSOF ¶¶ 50, 52.

assigned job ("Hours Per Dispatch"), and (3) on average, how often jobs were completed on the first dispatch versus needing repeat visits to rectify problems caused by the initial visit ("First Dispatch Resolution"). DSOF ¶ 23; POSOF ¶ 23. In Plaintiff's 2017 year-end review, he averaged 1.9 hours per dispatch, so he did not meet the Hours Per Dispatch goal of 1.65 hours. DSOF ¶ 29; POSOF ¶ 29. He also failed to meet the Arrival Window and First Dispatch Resolution benchmarks. J.A. 0140. As a result, his overall 2017 year-end performance rating was "Improvement Needed." DSOF ¶ 32, POSOF ¶ 32.

Defendant alleges that Plaintiff received a 2018 development plan, which reminded him of the performance objectives he was expected to meet that year. DSOF ¶ 39. Defendant further alleges that Plaintiff received verbal counseling to address his poor metrics and was advised that if he did not improve, he could receive further discipline or termination. DSOF ¶¶ 42-43. To that end, when Plaintiff again failed to meet his performance metrics in his 2018 mid-year review, he was advised that he "still needs improvement." DSOF ¶¶ 44-48; J.A 0146. While Plaintiff denies receiving a 2018 mid-year review, POSOF ¶¶ 42-49, Defendant produced a copy of Plaintiff's 2018 mid-year review paperwork, which shows that Plaintiff's performance metrics fell below the required threshold. J.A. 0146.

On September 4, 2018, Plaintiff's employment was terminated. Compl. ¶ 15; POSOF ¶ 55. Five other temporary service technicians, two white and two black, were also terminated. DSOF ¶ 54; POSOF ¶ 54; J.A. 0166. All six were under Matthew Freeman's supervision and were ineligible for permanent hire under The July Agreement because their performance did not meet or exceed expectations. DSOF ¶ 54; POSOF ¶ 54; J.A. 0166.

Plaintiff now alleges that he was treated less favorably than white employees and that Defendant was hostile to his race. POSOF ¶ 10; Compl. ¶ 21. He asserts that he was denied an

assigned van and other equipment that white employees received, and that such disparate treatment ultimately affected his performance and prompted his termination. POSOF ¶ 10; Pl. Dep. at 25-27, 183. Defendant refutes these allegations and maintains that Plaintiff's repeated failure to achieve the required performance ratings made him ineligible for permanent hire. Def.'s Mot. Summ. J. at 5, ECF No. 23-1.

### 2. Procedural History

Plaintiff sued Defendant on November 21, 2019. ECF No. 1. On February 25, 2020, this case was reassigned to this Court. ECF No. 11.

On August 19, 2020, Defendant moved for summary judgment on all counts. ECF No. 23. Plaintiff responded to Defendant's motion on September 2, 2020. ECF No. 24. Defendant filed a reply brief in further support of its motion on September 10, 2020. ECF No. 27. The motion is now ripe for decision.

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

In deciding a motion for summary judgment, a court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378 (2007). "[A] district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255.

The movant bears the initial burden of showing the absence of a genuine issue of material fact. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the moving party meets this burden with "a properly supported motion for summary judgment . . . the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250. "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).

If "reasonable minds could differ . . . [then] an issue of material fact remains . . . for the trier of fact." *Young v. Martin*, 801 F.3d 172, 177 (3d Cir. 2015). However, "[i]f the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249-50.

### III.  DISCUSSION

Plaintiff brings a racial discrimination claim against Defendant, alleging violations of Title VII and the PHRA. "Title VII and the Pennsylvania Human Relations Act . . . prohibit an employer from engaging in race discrimination against an employee." *Boykins v. SEPTA*, 722 F. App'x 148, 151-52 (3d Cir. 2018). "The proper analysis under Title VII and the Pennsylvania Human Relations Act is identical, as Pennsylvania courts have construed the protections of the two acts interchangeably." *Shamsuddi v. Classic Staffing Services*, 509 F. Supp. 3d 327, 334 (E.D. Pa. 2020) (quoting *Weston v. Pennsylvania*, 251 F.3d 420, 425 n.3 (3d Cir. 2001)). Accordingly, this

Court will consider Plaintiff's Title VII and PHRA claims together. *See Atkinson v. LaFayette College*, 460 F.3d 447, 454 n.6 (3d Cir. 2006).

"Title VII racial discrimination claims are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas*." *Boykins*, 722 F. App'x at 152; *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The *McDonnell Douglas* burden-shifting analysis proceeds in three parts:

> The first part of the *McDonnell Douglas* test imposes a burden of production on the employee to establish a prima facie case of discrimination or retaliation, which, if successful, raises an inference of discrimination or retaliation . . . . After a prima facie case is established, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action or decision . . . . If the employer successfully articulates one, the burden returns to the employee, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual.

*Anderson v. Boeing Company*, 694 F. App'x 84, 86 (3d Cir. 2017).

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff alleging race discrimination must first establish a prima facie case. "To establish a prima facie case of racial discrimination, a plaintiff must show that he: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) the circumstances of the adverse employment action give rise to an inference of discrimination." *Whitmore v. Nat'l R.R. Passenger Corp.*, 510 F. Supp. 3d 295, 304 (E.D. Pa. 2020) (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999)). "The plaintiff's burden at this stage is not onerous, as the goal is to eliminate the most common nondiscriminatory reasons for the defendant's actions; by doing so, the prima facie case creates an inference that the defendant's actions were discriminatory." *Id.* at 304 (internal quotations omitted). "To survive a motion for summary judgment, the evidence must be sufficient to convince a reasonable factfinder to find all of the

elements of [the] prima facie case." *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167 (3d Cir. 2001) (internal quotations omitted).

Here, it is undisputed that Plaintiff can establish the first and third prongs of his prima facie case of racial discrimination. Def.'s Mot. Summ. J. at 5. Plaintiff is a member of a protected class – he is an African American male – and his termination was an adverse employment action. At issue, then, are the second and fourth prongs of his prima facie case. *Id.* at 5. After careful consideration of Defendant's motion, the Court will enter summary judgment in Defendant's favor. Plaintiff did not meet the objective hiring criteria set forth by The July Agreement, so he did not qualify for permanent employment and he cannot establish the second prong of his prima facie case.

      a.     **Qualified for Position**

Defendant contends that Plaintiff was not qualified for a permanent service technician position because he did not achieve the necessary performance rating under The July Agreement. Def.'s Mot. Summ. J. at 5. The Court agrees.

"A plaintiff is not qualified for a position, as required by the second prong – and [his] prima facie case fails – if there is objective evidence [he] did not possess minimal job qualifications such as 'a license or a similar prerequisite.'" *Cooper v. Thomas Jefferson Univ. Hosp.*, 743 F. App'x 499, 502 (3d Cir. 2018) (citing *Makky v. Chertoff*, 541 F.3d 205, 216 (3d Cir. 2008)). "[I]f there is unchallenged objective evidence that [the plaintiff] did not possess the minimal qualifications for the position plaintiff sought to obtain or retain, the plaintiff cannot establish a prima facie case of discrimination." *Nappi v. Holland Christian Home Ass'n*, 2015 WL 5023007, at *5 (D.N.J. Aug. 21, 2015).

A plaintiff's failure to meet objective performance metrics set by the employer can show that he is unqualified for his position. For example, in *Stewart v. Progressive Business Publications, Inc.*, a trainee was denied permanent employment after failing to meet the ".60 [sales per hour] benchmark designated" by her employer. 2019 WL 95474, at *4 (E.D. Pa. Jan. 2, 2019). Indeed, the employer's training materials required all trainees to "achieve .60 sales per paid hour or higher" to qualify for permanent employment. *Id.* at *4. While the plaintiff-trainee alleged that her termination was the result of race discrimination, the Court rejected that claim. First, "[b]y virtue of her inability to attain the minimum sales threshold," the plaintiff was not qualified "for promotion to a permanent marketing representative position." *Id.* at *4-5. Second, the plaintiff produced no evidence of "any other trainees . . . who were retained despite having also failed to attain the required .60 sales per hour figure." *Id*. at *4. As a result, the Court concluded that "there is absolutely no evidence that Defendant treated other, non-African American employees more favorably than Plaintiff." *Id.*

Here, Plaintiff was not qualified for a position as a permanent technician because he failed to meet Defendant's requirements for employment. The July Agreement, like the training materials in *Stewart*, set forth objective criteria to determine eligibility for employment. DSOF ¶¶ 51-52; POSOF ¶¶ 51-52. Only technicians with job performance ratings of "Meets Expectations" or "Exceeds Expectations" were eligible for permanent positions. And to receive those ratings, technicians had to meet certain Arrival Window, Hours Per Dispatch, and First Dispatch Resolution benchmarks. DSOF ¶ 23; POSOF ¶ 23.

Plaintiff did not meet any of those benchmarks per his 2017 year-end and 2018 mid-year reviews. J.A. 0140, 0146-0147. He was neither meeting nor exceeding Defendant's expectations,

so he was not qualified for permanent employment under the terms of The July Agreement. DSOF ¶ 29; POSOF ¶ 29; J.A. 0140, 0146-0147.

Plaintiff attempts to sidestep these metrics by describing them as unreliable. Pl.'s Opp'n at 13. He claims that he was not given an assigned van and other tools necessary to complete his work. POSOF ¶¶ 10, 59; Pl.'s Opp'n at 5, 9, 14. Had he been provided with that equipment, the argument goes, he would have met Defendant's performance benchmarks. POSOF ¶ 59. But beyond his own opinion, he does not present *any* evidence to suggest that his purported lack of a van or certain tools precluded adequate job performance, let alone that he was denied any equipment because of his race. "Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment," yet that is all that Plaintiff relies on in characterizing Defendant's performance ratings as unreliable. *Betts v. New Castle Youth Development Center*, 621 F.3d 249, 252 (3d Cir. 2010).

In sum, because Plaintiff did not achieve a rating of "Exceeds Expectations" or "Meets Expectations," he was not qualified for permanent hire under The July Agreement and the second prong of his prima facie case fails.[4]

---

[4] Like the plaintiff-trainee in *Stewart*, Plaintiff also fails to present evidence of any other temporary employees who were retained despite having also failed to attain the required performance ratings. For that reason, Plaintiff cannot establish prong four of his prima facie case, either. "To prove the fourth prong—that the adverse action occurred under circumstances giving rise to an inference of discrimination—[a] [p]laintiff must establish some causal nexus between [his] membership in a protected class and the adverse employment action." *Washington v. Southeastern Pennsylvania Transp. Authority*, 2021 WL 2649146, at *17 (E.D. Pa. June 28, 2021) (citing *Jordon v. Pennsylvania Southeastern Transp. Authority*, 2021 WL 4814414, at *8 (E.D. Pa. Oct. 10, 2012) (internal quotations omitted)).

"Common circumstances giving rise to an inference of unlawful discrimination include . . . the more favorable treatment of similarly situated colleagues outside of the relevant class." *Whitmore*, 510 F. Supp. 3d at 305 (quoting *Bullock v. Children's Hosp. of Philadelphia*, 71 F. Supp. 2d 482, 487 (E.D. Pa. 1999)). To that end, a plaintiff can establish the requisite casual nexus

## IV.   CONCLUSION

Plaintiff has failed to establish a prima facie case of racial discrimination in violation of Title VII and the PHRA because he cannot show that he was qualified for permanent hire pursuant to The July Agreement. Plaintiff cannot establish the second prong of his prima facie case, so we need not analyze the remaining two steps of the *McDonnell Douglas* framework. For the foregoing reasons, Defendant's motion for summary judgment is granted. An appropriate order follows.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge

---

"by showing . . . that similarly situated individuals were treated more favorably." *Washington*, 2021 WL 2649146, at *17 (citing *Jordan*, 2021 WL 4814414, at *8 (internal quotations omitted)).

Here, Plaintiff has not shown that Defendant treated any similarly situated employees more favorably. There is no evidence that Defendant retained *any* non-African American temporary technicians who did not meet The July Agreement's criteria. And, as explained above, Plaintiff's argument that he was denied certain equipment because of his race is based on nothing more than conjecture. *See Ellison v. BHBC Nw. Psychiatric Hosp.*, 2013 WL 1482199, at *9 (E.D. Pa. Apr. 9, 2013) (recognizing that "uncorroborated, subjective beliefs" are "patently insufficient to oppose a motion for summary judgment"). Overall, "there is absolutely no evidence that Defendant treated other, non-African American employees more favorably than Plaintiff." *Stewart*, 2019 WL 95474, at *4.